## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RONALD J. HARRELL, by and through his next friend, Ron A. Harrell; and CHRISTINE HARRELL,<br><br>       Plaintiffs,<br><br>v.<br><br>SOUTH JORDAN CARE GROUP, LLC d/b/a PHEASANT RUN ALZHEIMER'S SPECIAL CARE CENTER; and JERRY ERWIN ASSOCIATES, INC. d/b/a JEA SENIOR LIVING,<br><br>       Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>Case No: 2:19-cv-00315-PMW<br><br>Chief Magistrate Judge Paul M. Warner |

All parties in this case have consented to Chief Magistrate Judge Paul M. Warner conducting all proceedings, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[1] *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Before the court is Defendant South Jordan Care Group, LLC and Jerry Erwin Associates, Inc.'s (collectively "Defendants") Renewed Motion to Dismiss.[2] Pursuant to Civil Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court has concluded that oral argument is not necessary and will determine the motion on the basis of the written memoranda. *See* DUCivR 7-1(f). Having reviewed the parties' briefs and the relevant law, the court renders the following Memorandum Decision and Order.

---

[1] *See* ECF No. 17.
[2] *See* ECF No. 13.

# BACKGROUND[3]

Plaintiff Ronald J. Harrell ("Mr. Harrell") is an African American man and has been diagnosed with Alzheimer's dementia. Plaintiff Christine Harrell ("Mrs. Harrell") is Mr. Harrell's wife and caregiver, and has been handling Mr. Harrell's affairs pursuant to a durable power of attorney since 2015.

On March 17, 2018, Mr. Harrell moved to Pheasant Run Alzheimer's Special Care Facility ("Pheasant Run"), an assisted living facility for seniors with Alzheimer's disease or other dementia-related illnesses. During Mr. Harrell's stay at Pheasant Run, Plaintiffs allege that Defendants engaged in a pattern or practice of discrimination on the basis of Mr. Harrell's race and disability. The complaint describes several comments and actions made by Pheasant Run employees and residents that appear to be racially motivated against Mr. Harrell. Some examples include referring to Mr. Harrell as "the sweaty black man" or "the black man" rather than by his name; informing Mrs. Harrell that Mr. Harrell was "not our type of resident" and asking if he played football and whether that had caused the disease; staff expressing they were "fearful" of Mr. Harrell due to his size, strength, and activity level because their usual residents were "older white women"; hesitation to approach Mr. Harrell or to provide assistance to him when needed; and failing to address a report of a Pheasant Run resident physically harming Mr. Harrell.[4]

On April 10, 2018, Pheasant Run phoned Mrs. Harrell to inform her that they had called the police and an ambulance to transport Mr. Harrell to the behavioral health unit at Salt Lake Regional Medical Center ("Salt Lake Regional"). Pheasant Run explained that Mr. Harrell had

---

[3] The following background is taken from Plaintiffs' first amended complaint, unless noted otherwise.
[4] ECF No. 12 at 5-7.

grabbed a female resident's arm in the lunchroom four hours earlier. The resident's family had been present and complained. Pheasant Run then made the decision to transfer Mr. Harrell to Salt Lake Regional and terminated his tenancy at Pheasant Run. Mrs. Harrell had not been notified of the incident at any point earlier in the day. When Mrs. Harrell inquired why Mr. Harrell had grabbed the resident's arm, Pheasant Run stated that the resident "called him a nigger."[5] Mr. Harrell had been repeatedly subjected to this resident's used of the N-word for several weeks without any staff intervention.

Mrs. Harrell requested that she or her husband's friend be permitted to transport Mr. Harrell to Salt Lake Regional as opposed to uniformed officials that may frighten him. Mrs. Harrell explained that given his condition and history of working in youth corrections, Mr. Harrell might become scared or believe that he was being arrested or incarcerated if uniformed strangers transported him. Pheasant Run denied Mrs. Harrell's request. Mrs. Harrell went to Salt Lake Regional to await Mr. Harrell's arrival.

During the ambulance ride, Mr. Harrell was restrained by uniformed emergency medical technicians. Mr. Harrell, predictably, became agitated and the ambulance was diverted to Intermountain Medical Center ("IMC"). After waiting two hours at Salt Lake Regional, Mrs. Harrell was notified that Mr. Harrell had been transferred to IMC. Upon reaching IMC, Mrs. Harrell found Mr. Harrell naked and urinating in the corner of the room and exhibiting signs of disorientation and distress.

JEA Senior Living stated that Mr. Harrell's tenancy at Pheasant Run would be re-evaluated after his medication was adjusted; however, later that same day, Pheasant Run

---

[5] ECF No. 12 at 8. Hereafter, the court will refer to this word as the "N-word."

informed Mrs. Harrell that Mr. Harrell would not be permitted to return to the facility and terminated his tenancy. Mr. Harrell eventually was able to find housing elsewhere after Defendants terminated his tenancy at Pheasant Run. Mr. Harrell's new housing arrangement is more restrictive, and rent is substantially more than Pheasant Run. Additionally, Mr. Harrell has experienced significant emotional distress and a cognitive decline since the traumatizing events surrounding Defendants' decision to make housing unavailable to him.

Plaintiffs filed the above captioned lawsuit asserting six causes of actions for violations of the Fair Housing Act ("FHA"). Defendants filed the instant motion to dismiss for lack of jurisdiction and failure to state a claim.[6] Specifically, Defendants assert Plaintiffs have not met the necessary jurisdictional requirements under the Utah Health Care Malpractice Act ("UHCMA") to initiate a lawsuit, and Mrs. Harrell has failed to state a claim.[7]

## DISCUSSION

### I.     First Motion to Dismiss

On June 7, 2019, Defendants filed a motion to dismiss[8] claims asserted against them in Plaintiffs' original complaint filed on May 8, 2010. Since then, Plaintiffs filed an amended complaint, and Defendants filed a renewed motion to dismiss the amended complaint.[9] As a general rule, an amended pleading supersedes the original and renders it of no legal effect. Accordingly, Defendants first motion to dismiss[10] filed on June 7, 2019, is deemed MOOT.

---

[6] *See* ECF No. 13.
[7] *See id.*
[8] *See* ECF No. 9.
[9] *See* ECF No. 13.
[10] *See* ECF No. 9.

## II.    Renewed Motion to Dismiss

### A.    *The UHCMA Does Not Apply to Plaintiffs' Housing Discrimination Claims.*

Defendants allege the instant lawsuit should be dismissed because Plaintiffs have not complied with the jurisdictional requirements under the UHCMA. Specifically, Plaintiffs neither obtained a certificate of compliance nor provided Defendants with 90 days' notice of intent to sue.[11] Although Plaintiffs' causes of action are brought under the FHA, Defendants allege the UHCMA, and its jurisdictional requirements, apply to Plaintiffs' claims because Pheasant Run is a healthcare provider as defined by Utah Code § 78B-3-403(11). In response, Plaintiffs assert the UHCMA applies to malpractice claims not housing discrimination claims and the UHCMA is preempted by federal law. The court agrees with Plaintiff and concludes that the UHCMA does not apply to claims brought under the FHA.

Under the UHCMA, "[a] malpractice action against a health care provider may not be initiated unless and until the plaintiff" gives the prospective defendant "at least 90 days' prior notice of intent to commence an action" Utah Code Ann. § 78B-3-412(1)(a). The UHCMA defines "malpractice action against a health care provider" as "any action against a health care provider, whether in contract, tort, breach of warranty, wrongful death, or otherwise, based upon alleged personal injuries relating to or arising out of health care rendered or which should have been rendered by a health care provider." Utah Code Ann. § 78B-3-403(17).

---

[11] The Utah Supreme Court in *Vega v. Jordan Valley Med. Ctr., LP* found the UHCMA's certificate of compliance requirement to be unconstitutional, and therefore, only the need to provide 90 days' notice remains under the UHCMA. *See Vega v. Jordan Valley Med. Ctr., LP*, 2019 UT 35, 449 P.3d 31.

When federal courts are faced with interpreting state laws, they "must look to rulings of the highest state court, and if no such rulings exist, must endeavor to predict how the high court would rule." *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 899 (10th Cir. 2006). In addition, federal courts are to "interpret state laws according to state rules of statutory construction." *Finstuen v. Crutcher*, 496 F.3d 1139, 1148 (10th Cir. 2007). The Utah Supreme Court examined the breadth of the UHCMA and the scope of section 78B-14-3[12] which classifies "malpractice action" as "any action against a health care provider." *Dowling v. Bullen*, 94 P.3d 915, 917 (Utah 2004). In *Dowling*, the court ruled that a broad application of "any action . . . relating to or arising out of health care rendered . . . by the health care provider" is inconsistent with the plain language of the statute and is inconsistent with the legislative intent "to alleviate health care costs via the establishment of a fixed window of time." *Id.* at 918. Instead, the court interpreted "any action" to mean only those actions which relate to or arise out of health care rendered and does not include actions that "are only tangentially related to their provision of health care services." *Id.* at 918.

Here, Plaintiffs' claims against Defendants are brought under the FHA and relate only tangentially to the health care services provided. Additionally, the court notes that the causes of action specifically enumerated in the statute—i.e., contract, tort, breach of warranty, wrongful death, or otherwise—are all state common law claims, and entirely unrelated to federal housing regulations which assisted living facilities and retirement communities must comply in addition to other housing components. *See* 42 U.S.C. § 3604; *see generally United States v. Lorantffy*

---

[12] Renumbered as § 78B-3-403 (effective Feb. 7, 2008).

*Care Center*, 999 F. Supp. 1037 (N.D. Ohio 1998); *United States v. Commonwealth of Puerto Rico*, 764 F. Supp. 220 (D.P.R. 1991); *see also* D. Trey Jordan, *Continuing Care Retirement Communities Versus the Fair Housing Act: Independent Living and Involuntary Transfer*, 9, MARQUETTE ELDER'S ADVISOR, 205, 210–11 (2007) (discussing the FHA's definition of dwelling).

Moreover, the FHA has its own jurisdictional procedures specifically drafted to further the intent of the FHA. Subjecting the FHA to additional state jurisdictional procedures conflicts with the intent and design of the FHA and frustrates the purpose of the statute. For these reasons, the UHCMA does not apply to Plaintiffs' housing discrimination claims, and Defendants' motion to dismiss on such grounds is denied.

> **B.** **Mrs. Harrell Sufficiently States a Claim Upon Which Relief Can Be Granted.**

Defendants argue that Mrs. Harrell's claims should be dismissed because she does not allege that she was a tenant or prospective tenant, or that Pheasant Run discriminated against her directly.

The FHA allows any "aggrieved person" to file a civil action seeking damages for a violation of the statute. 42 U.S.C.A § 3613(a)(I). And it defines an "aggrieved person" to include "any person who . . . claims to have been injured by a discriminatory housing practice." *Id*. at § 3602(i). The United States Supreme Court has repeatedly held that the FHA's definition of person "aggrieved" reflects a congressional intent to confer standing as broadly as is permitted by Article III of the Constitution. *See Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1303 (2017). And the Court has also repeatedly rejected the argument that standing requirements can only be met by persons who are directly targeted by discriminatory conduct. *See, e.g.*, *Bank*

*of Am. Corp.*, 137 S. Ct. at 1303 (finding standing for a municipality that alleged harm stemming

from discriminatory acts against other individuals and entities); *Havens Realty Corp. v.*

*Coleman*, 455 U.S. 363, 374 (1982) (finding standing for individual with no intention of renting

a home from the Defendants in that case, and for an organization that expended resources to

identify discriminatory housing practices); *Gladstone Realtors, et al. v. Village of Bellwood*, 441

U.S. 91, 109-13 (1979) (finding standing for a municipality alleging harm to its racial balance

and stability); *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429

U.S. 252, 261 (1977) (finding standing for a housing development corporation alleging financial

harm from discriminatory zoning decision); *Trafficante v. Metropolitan Life Insurance Co.*, 409

U.S. 205, 209-10 (1972) (finding standing for a white tenant alleging that the housing provider

discriminated against non-white prospective tenants). Based on the FHA's broad application of

standing and the aforementioned precedents, the court concludes that Mrs. Harrell is within the

zone of interests protected by the FHA.

Defendants next argue that Mrs. Harrell provides details of the time and money expended

by Mrs. Harrell as a result of Defendants' discriminatory actions in the Memorandum of

Opposition, but Plaintiffs failed to include such allegations in the actual amended complaint.

Based on this omission, Defendants assert Mrs. Harrell should be dismissed from the lawsuit.

Plaintiffs counter that this assertion runs contrary to the notice pleading requirements of Rule 8

of Federal Rules of Civil Procedure which requires only a "short and plain statement of the

claim" and "must be construed so as to do justice." Fed. R. Civ. P. 8.

Plaintiffs' amended complaint provides enough factual background to put Defendants on

notice as to Mrs. Harrell's claims. Even if the court were to grant Defendants' request to dismiss

Mrs. Harrell's claims for failure to plead with an exacting level of specificity, the court would undoubtedly permit Plaintiffs the opportunity to amend because such amendment would not be futile, and thus "justice . . . requires" this court to give Plaintiffs leave to amend. Fed. R. Civ. P. 15(a)(2). As such, the court determines that Mrs. Harrell has sufficiently stated claims upon which relief may be granted under Rule 8. To determine otherwise would run contrary to the directive in Rule 1 of Federal Rules of Civil Procedure, which instructs courts to construe the federal rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Accordingly, Defendants' motion to dismiss Mrs. Harrell's claims is denied.

## CONCLUSION AND ORDER

For the foregoing reasons, Defendants' First Motion to Dismiss[13] is deemed MOOT and Defendants' Renewed Motion to Dismiss[14] is DENIED.

IT IS SO ORDERED.

DATED this 31st day of March, 2020.

BY THE COURT:

Paul M. Warner
Chief United States Magistrate Judge

---

[13] *See* ECF No. 9.
[14] *See* ECF No. 13.